UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

   - against -

STACEY ISAACS,

               Defendant.

------------------------------------X

09 Cr. 997-01 (RWS)

SENTENCING OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/18/11

**Sweet, D.J.**

      On August 9, 2010, Stacey Isaacs, a/k/a Stacey L. Forrester, a/k/a Stacey Y. Mensah, ("Isaacs" or "Defendant") pleaded guilty to one count of conspiracy to commit immigration document fraud, in violation of 18 U.S.C. § 371.  For the reasons set forth below, Isaacs will be sentenced to three years probation with six months served in home detention.  Isaacs will also be required to pay a special assessment of $100.

**Prior Proceedings**

      On October 19, 2009, Indictment 09 CR 997 (RWS) was filed in the Southern District of New York.  Count 1 charges that from at least 2002, up to and including June 7, 2006, in

the Southern District of New York and elsewhere, Isaacs and others conspired to make under oath, and subscribe as true, as permitted under penalty of perjury under 28 USC § 1746, a false statement with respect to a material fact in an application, affidavit, and other document required by the immigration laws and regulations prescribed thereunder, and would and did present such application, affidavit, and other document which contained a false statement, in violation of 18 USC 1546(a).  This conduct violated 18 U.S.C. § 371.

On August 9, 2010, Isaacs appeared before the Honorable Debra C. Freeman in the Southern District of New York and pleaded guilty to Count 1 in accordance with a plea agreement.

Isaacs's sentencing is currently scheduled for April 19, 2011.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d

Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines.   Thus, the sentence to be imposed here is the result of a consideration of:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed —

    (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)   to afford adequate deterrence to criminal conduct;

    (C)   to protect the public from further crimes of the defendant; and

    (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;

(4)   the kinds of sentence and the sentencing range established for —

    (A)   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5)   any pertinent policy statement . . . [issued by the Sentencing Commission];

(6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

3

(7)   the need to provide restitution to any victims of
the offense.

18 U.S.C. § 3553(a).   A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not.   See Crosby, 397 F.3d at 114-15.


## The Defendant

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Isaacs's personal and family history.


## The Offense Conduct

The following description draws from the PSR.   The specific facts of the underlying conduct are adopted as set forth in that report.

Information contained in this section is based on a criminal complaint prepared by a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement ("ICE").

4

**The Forrester Application and Petition**

On July 28, 1996, the United States Department of Homeland Security, Citizenship and Immigration Services ("USCIS") received an I-485 Application to Register Permanent Resident or Adjust Status submitted under the name of an individual with the last name of "Forrester" (the "Forrester Applicant"), seeking Lawful Permanent Resident status (the "Forrester Application"). An I-485 Application is an application to USCIS by an alien currently residing in the United States seeking Lawful Permanent Resident status. This application must be submitted by the alien, and the truth and correctness of both the application's contents and the evidence submitted with the application must be certified by the alien under penalty of perjury under the laws of the United States.

On July 28, 1996, USCIS also received an I-130 Petition for Alien Registry submitted by "Stacey L. Forrester (nee 'Isaacs')" on behalf of the Forrester Applicant (the "Forrester Petition"). An I-130 Petition is a petition to USCIS by a citizen or lawful permanent resident of the United States who seeks to have an alien relative immigrate to the United

5

States of America, and the truth and correctness of both the petition's contents and the evidence submitted with the petition must be certified by the citizen or lawful permanent resident under penalty of perjury under the laws of the United States.

The Forrester Application listed the Forrester Applicant's I-94 number as having the last four digits 9403, and the current address of the Forrester Applicant as an address in St. Albans, New York ("Address-1").  The Forrester Application also listed the Forrester Applicant's spouse as "Stacey L. Forrester," having a date of birth on a specific day in January of 1965 ("DOB-1").

The Forrester Applicant certified under penalty of perjury that the information on the Forrester Application was true and correct, and signed the certification in the name of the Forrester Applicant.

The Forrester Petition listed the petitioner's date of birth as DOB-1, and the current address of the petitioner as Address-1.  The Forrester Petition also listed the petitioner's spouse as the Forrester Applicant, having an I-94 number with

6

the last four digits 9403, a date of marriage of July 9, 1996, and a place of marriage of Manhattan.

The petitioner certified under penalty of perjury that the information on the Forrester Petition was true and correct, and signed the certification "Stacey Forrester."

**The Mensah Application and Petition**

On April 26, 2001, USCIS received an I-485 Application to Register Permanent Resident or Adjust Status submitted under the name of an individual with the last name of "Mensah" (the "Mensah Applicant"), seeking Lawful Permanent Resident status (the "Mensah Application").

On April 26, 2001, USCIS also received an I-130 Petition for Alien Registry submitted by "Stacey Y. Mensah (nee 'Isaacs')" on behalf of the Mensah Applicant (the "Mensah Petition").

The Mensah Application listed the Mensah Applicant's current address as an address in the Bronx, New York ("Address-

2").  The Mensah Application also listed the Mensah Applicant's spouse as "Stacey Y. Mensah," having a date of birth of DOB-1.

The Mensah Applicant certified under penalty of perjury that the information on the Mensah Application was true and correct and signed the certification in the name of the Mensah Applicant.

The Mensah Petition listed the petitioner's date of birth as DOB-1, and the current address the petitioner as Address-2.  The Mensah Petition also listed the petitioner's spouse as the Mensah Applicant, a date of marriage of April 11, 2001, and a place of marriage of Yonkers, New York.

The petitioner certified under penalty of perjury that the information on the Mensah Petition was true and correct, and signed the certification "Stacey Mensah."

**The Manomi Application and Petition**

On September 3, 2002, USCIS received an I-485 Application to Register Permanent Resident or Adjust Status submitted under the name of an individual with the last name of

8

"Manomi" (the "Manomi Applicant"), seeking Lawful Permanent
Resident status (the "Manomi Application").

On September 3, 2002, USCIS also received an I-130
Petition for Alien Registry submitted by an individual using the
last name of "Bowers" (the "Bowers Petitioner") on behalf of the
Manomi Applicant (the "Manomi Petition").

The Manomi Application listed the Manomi Applicant's
I-94 number as having the last four digits 5508, and the current
address of the Manomi Applicant as an address in Jamaica, New
York ("Address-3").  The Manomi Application also listed the
Manomi Applicant's spouse as the Bowers Petitioner, having a
date of birth on a specific day in July of 1962 ("DOB-2").

The Manomi Applicant certified under penalty of
perjury that the information on the Manomi Application was true
and correct, and signed the certification in the name of the
Manomi Applicant.

The Manomi Petition listed the Bowers Petitioner's
date of birth as DOB-2 and the current address of the Bowers
Petitioner as Address-3.  The Manomi Petition also listed the

Bowers Petitioner's spouse as the Manomi Applicant, having an I-94 number with the last four digits 5508.

The Bowers Petitioner certified under penalty of perjury that the information on the Manomi Petition was true and correct and signed the certification in the name of the Bowers Petitioner.

On February 1, 2005, two individuals identifying themselves as the Manomi Applicant and the Bowers Petitioner appeared for an initial interview in support of the Manomi Application.  This interview was conducted at 26 Federal Plaza, New York, New York.  During the course of this interview, the Manomi Applicant and Bowers Petitioner swore, under oath, that the information contained in the Manomi Application and Manomi Petition was true.

On June 7, 2006, two individuals identifying themselves as the Manomi Applicant and the Bowers Petitioner appeared for an interview conducted in accordance with the procedure enumerated in Stokes v. INS, No. 74 Civ. 1022 (S.D.N.Y. Nov. 10, 1996), in further support of the Manomi Application.  This interview was conducted at 26 Federal Plaza,

10

New York, New York.  During the course of this interview, the Manomi Applicant and the Bowers Petitioner swore, under oath, that the information contained in the Manomi Application and Manomi Petition was true.

**The Johnson Application and Petition**

On November 21, 2002, USCIS received an I-485 Application to Register Permanent Resident or Adjust Status submitted under the name of an individual with the last name of "Johnson" (the "Johnson Applicant"), seeking Lawful Permanent Resident status (the "Johnson Application").

On November 21, 2002, USCIS also received an I-130 Petition for Alien Registry submitted by the Bowers Petitioner on behalf of the Johnson Applicant (the "Johnson Petition").

The Johnson Application listed the Johnson Applicant's alien registration number as having the last four digits 8246 and the current address of the Johnson Applicant as an address in Queens, New York ("Address-4").  The Johnson Application also listed the Johnson Applicant's spouse as the Bowers Petitioner, having a date of birth of DOB-2.

11

The Johnson Applicant certified under penalty of perjury that the information on the Johnson Application was true and correct, and signed the certification in the name of the Johnson Applicant.

The Johnson Petition listed the Bowers Petitioner's date of birth as DOB-2, and the current address of the Bowers Petitioner as Address-4. The Johnson Petition also listed the Bowers Petitioner's spouse as the Johnson Applicant, having an alien registration number with the last four digits 8246.

The Bowers Petitioner certified under penalty of perjury that the information on the Bowers Petition was true and correct, and signed the certification in the name of the Bowers Petitioner.

From speaking with the Forrester Applicant, the case agent learned, among other things, the following:

- In 1995 or 1996, an acquaintance of the Forrester Applicant introduced the Forrester Applicant to a co-conspirator not named herein ("CC-1"), who stated that CC-1 could help the

Forrester Applicant obtain a green card by entering into a
fraudulent marriage with a United States female.
Ultimately, CC-1 introduced the Forrester Applicant to
someone using the name "Stacey Isaacs," who agreed to marry
the Forrester Applicant for approximately $2,500, which
would be paid in three installments.  Thereafter, the
Forrester Applicant and "Stacey Isaacs" obtained a marriage
license from City Hall in Manhattan, were wed, and
completed certain immigration paperwork that was submitted
to INS.

- On November 8, 2008, the agent showed a photograph known to
  be a photograph of Defendant to the Forrester Applicant.
  The Forrester Applicant identified the photograph as the
  individual he knows as "Stacey Isaacs," the woman he
  married in an attempt to obtain a green card.

     From speaking with the Mensah Applicant, the case
agent learned, among other things, the following:

- In approximately 2001, the Mensah Applicant was introduced
  to someone using the name "Stacey Isaacs" by a co-
  conspirator not named herein ("CC-2") because the Mensah

13

Applicant was seeking to obtain legal immigration status by marrying a United States citizen.  Although "Stacey Isaacs" initially indicated that she would find someone for the Mensah Applicant to marry, she ultimately agreed to marry the Mensah Applicant herself.  In April 2001, the Mensah Applicant and "Stacey Isaacs" obtained a marriage license in Yonkers, New York, were wed, and completed certain immigration paperwork that was submitted to INS.

- On November 12, 2008, the agent showed a photograph known to the agent to be a photograph of Defendant to the Mensah Applicant.  The Mensah Applicant identified the photograph as the individual the Mensah Applicant knows as "Stacey Isaacs," the woman the Mensah Applicant married in an attempt to obtain legal immigration status.

From speaking with the Bowers Petitioner, the case agent learned, among other things, the following:

- In May 2002, the Bowers Petitioner was introduced to someone using the name "Stacey Isaacs" by a co-conspirator not named herein ("CC-3").  CC-3 told the Bowers Petitioner that "Stacey Isaacs" arranged fraudulent marriages, and

14

that the Bowers Petitioner could make some money by
marrying aliens, which would assist them in obtaining
immigration status.

- In July 2002, "Stacey Isaacs" arranged for the Bowers
  Petitioner and the Johnson Applicant to meet.  "Stacey
  Isaacs" accompanied the Bowers Petitioner and the Johnson
  Applicant to the courthouse for their wedding on July 14,
  2002, and paid the Bowers Petitioner $1,000 in cash
  following the wedding.

- In July 2002, "Stacey Isaacs" arranged for the Bowers
  Petitioner and the Manomi Applicant to meet.  "Stacey
  Isaacs" accompanied the Bowers Petitioner and the Manomi
  Applicant to the courthouse for their wedding on July 19,
  2002.

- On September 18, 2008, the agent showed a photograph known
  to be a photograph of Defendant to the Bowers Petitioner.
  The Bowers Petitioner identified the photograph as the
  individual he knew as "Stacey Isaacs."

Based on the foregoing, a criminal complaint was filed

15

on July 13, 2009.  Isaacs was arrested on July 22, 2009.

**The Relevant Statutory Provisions**

Pursuant to 18 U.S.C. § 371, the maximum term of imprisonment is 5 years.

If a sentence of imprisonment is imposed, the Court may impose a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2).

Defendant is eligible for between one and five years' probation by statute, pursuant to 18 U.S.C. § 3561(c)(1).

The maximum fine that may be imposed is $250,000, pursuant to 18 U.S.C. § 3571.  A special assessment of $100 per count is mandatory, pursuant to 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2010 edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to § 1B1.11(a).  The

Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

The guideline for a violation of 18 U.S.C. § 371 is found in § 2X1.1, which instructs the reader to apply the Guidelines for the underlying offense, which is 18 U.S.C. § 1546 in this case. The guideline for a violation of 18 U.S.C. § 1546 is found in § 2L2.1(a), which provides for a base offense level of 11.

Pursuant to § 3B1.1(a), an increase of 4 levels is warranted because Defendant was an organizer or leader of the criminal activity, and the criminal activity involved five or more participants.

Based on her plea allocution, Defendant has shown recognition of her responsibility for the offense. Pursuant to § 3E1.1(a), the offense is reduced two levels.

Accordingly, the applicable offense level is 13.

On July 16, 1989, Isaacs was arrested and charged with

17

possession of a weapon and resisting arrest.  On September 28, 1990, Isaacs was sentenced in the Superior Court for Bergen County, New Jersey to 5 years' probation.  On February 17, 1995, Defendant was sentenced for violation of probation to an additional term of probation.  Pursuant to § 4A1.2(e)(3), this conviction warrants zero criminal history points.

On April 7, 1994, Isaacs was arrested and charged with operating a motor vehicle while impaired by drugs.  On July 28, 1994, she was sentenced in the New York County Criminal Court to conditional discharge and a $500 fine.  On September 29, 1994, Isaacs was re-sentenced for violation of her conditional discharge to conditional discharge and seven days of community service.  Pursuant to §§ 4A1.1(c) and 4A1.2(e)(2), this conviction warrants one criminal history point.

On May 30, 1994, Isaacs was arrested and charged with operating a motor vehicle while impaired by drugs.  On June 3, 1994, she was sentenced in the Bronx County Criminal Court to 15 days' custody and a $750 fine.  Pursuant to §§ 4A1.1(c) and 4A1.2(e)(2), this conviction warrants one criminal history point.

18

A total of two criminal history points establishes a Criminal History Category of II, pursuant to the table at Chapter 5, Part A, of the Guidelines.

Based on a total offense level of 13 and a Criminal History Category of II, the Guidelines range for imprisonment is 15 to 21 months.

The Guidelines range for a term of supervised release is two to three years, pursuant to § 5D1.2(a)(2).  If a term of imprisonment of one year or less is imposed, a term of supervised release is not required but is optional, pursuant to § 5D1.1(b).  Supervised release is required if the Court imposes a term of imprisonment of more than one year or when required by statute, pursuant to § 5D1.1(a).

Because the applicable guideline range is in Zone D of the Sentencing Table, Defendant is not eligible for probation, pursuant to § 5B1.1, Application Note #2.

The fine range for the instant offense is from $3,000 to $30,000 pursuant to § 5E1.2(c)(3)(A).  Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the

19

expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7).  The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,270.93 to be used for imprisonment, a monthly cost of $317.32 for supervision, and a monthly cost of $2,063.19 for community confinement.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103.  In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a downward departure from the Guidelines sentence is warranted in the instant case.  A sentence of imprisonment is not required in this case to satisfy the

20

interests of justice.  Defendant has been on bail without incident for over 18 months.  Defendant has suffered from a lengthy history of substance abuse, particularly with the drug PCP.  Since being released on bail, Defendant has been involved in both inpatient and weekly outpatient counseling.  It appears that her treatment is going well, and Isaacs has remained sober. In light of this progress and in an effort to build upon and not undermine it, a sentence of probation, coupled with a term of home detention, is sufficient, but not greater than necessary to satisfy the objectives of sentencing set forth in 18 USC § 3553(a).

## The Sentence

For the instant offense, Isaacs will be sentenced to three years' probation with six months served in home detention.

Isaacs is directed to report to the nearest United States Probation Office within seventy-two hours of release to commence her term of supervised release.  It is recommended that Isaacs be supervised by the district of her residence.

As mandatory conditions of her supervised release,

Isaacs shall:   (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; and (3) not possess a firearm or destructive device.   The mandatory drug testing condition is suspended due to the imposition of a special condition requiring drug treatment and testing.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

1. Defendant shall provide the probation officer with access to any requested financial information.

2. Defendant will participate in a program approved by the United States Probation Office, which program may include testing to determine whether Defendant has reverted to using drugs or alcohol.   The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer.   Defendant will be required to contribute to the costs of services rendered (co-payment), in an amount determined by the probation officer, based on ability to pay or availability of the third-party payment.

22

3. Defendant shall submit her person, residence, place of business, vehicle, or any other premises under her control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.

A special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

23

The terms of this sentence are subject to modification at the sentencing hearing scheduled for April 19, 2011.

It is so ordered.

New York, NY
April  /5 , 2011

ROBERT W. SWEET
U.S.D.J.